**WO**

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

Raymond Earl Rigsby,                    )   No. CV 11-1696-PHX-DGC (ECV)
                                        )
            Plaintiff,                  )   **ORDER**
                                        )
vs.                                     )
                                        )
State of Arizona, et al.,               )
                                        )
            Defendants.                 )
_____ )

**I.      Procedural History**

On June 27, 2011, Plaintiff Raymond Earl Rigsby, who is confined in the Arizona State Prison Complex (ASPC)-Yuma in San Luis, Arizona, filed a Complaint in the Superior Court of Maricopa County, Arizona. On August 26, 2011, Defendant Jan Brewer filed a Notice of Removal and removed the case to this Court.

In a September 8, 2011 Order, the Court dismissed Plaintiff's Complaint, without prejudice, because Plaintiff had failed to file his Complaint on a court-approved form, as required by Local Rule of Civil Procedure 3.4. After much litigation, the Court gave Plaintiff until April 30, 2012, to file an amended complaint on a court-approved form.

On April 23, 2012, Plaintiff filed an Application to Proceed *In Forma Pauperis* and a Motion for Leave to Exceed Page Limit, lodged a First Amended Complaint, and filed a Motion for TRO and Preliminary Injunction, a Memorandum of Law in Support, and a Declaration in Support. In a May 10, 2012 Order, the Court denied as moot the Application

to Proceed, denied the Motion for Leave to Exceed Page Limit, and directed the Clerk of Court not to file the First Amended Complaint and to strike the Motion for TRO and Preliminary Injunction and the Memorandum in Support. The Court gave Plaintiff 30 days to file an amended complaint that complied with the Order.

On May 11, 2012, Plaintiff filed a Motion for Appointment of Counsel, which the Court denied in a May 24, 2012 Order. On June 1, 2012, Plaintiff filed a Motion for Court Order to Return Documents. On June 11, 2012, he filed a Motion for Extension of Time. In a July 2, 2012 Order, the Court denied the Motion for Court Order to Return Documents and granted Plaintiff's Motion for Extension of Time. The Court gave Plaintiff an additional ten days to comply with the May 10th Order.

On June 27, 2012, Plaintiff filed a "Motion to Extend Time and Motion to Exceed Page Limit" and attached to it a Second Amended Complaint. He also filed an Application to Proceed *In Forma Pauperis*, a Motion for TRO and Preliminary Injunction, a Memorandum of Law in Support, an Appendix of Exhibits in Support, and a Motion for Appointment of Counsel. In an August 20, 2012 Order, the Court denied as moot the Motion to Extend Time and the Application to Proceed, denied the Motion for Appointment of Counsel and Motion for TRO and Preliminary Injunction, granted the Motion to Exceed Page Limit, directed the Clerk of Court to docket the lodged Second Amended Complaint, and dismissed the Second Amended Complaint because Plaintiff had failed to state a claim. The Court gave Plaintiff 30 days to file a third amended complaint that cured the deficiencies identified in the Order.

On September 21, 2012, Plaintiff filed a Motion to Enlarge Time (Doc. 55). On October 5, 2012, he filed a "Motion for Court Order to Renew or Reconsider Plaintiff's Motion for TRO and Preliminary Injunction and the Memo of Law in Support Thereof and Appendix of Exhibits/Motion for Counsel" (Doc. 56) and a Third Amended Complaint (Doc. 57). On October 12, 2012, Plaintiff filed a "Supplement to Plaintiff's Third Amended Complaint" (Doc. 58).

. . . .

## II.    Motion to Enlarge Time

In his September 21, 2012 Motion to Enlarge Time, Plaintiff seeks a ten-day extension of time to file his third amended complaint. Plaintiff seeks the extension of time because he has limited time to write during the day, has no access to law books or legal assistance, has no "means or space to conduct private and confidential legal writing," and had a week-long flu-like virus. The Court, in its discretion, will grant the Motion to Enlarge Time and will consider Plaintiff's Third Amended Complaint as timely filed.

## III.    Supplement to Plaintiff's Third Amended Complaint

In his October 12, 2012 Supplement to Plaintiff's Third Amended Complaint, Plaintiff submits additional allegations that were "inadvertently not stated in the third amended complaint due to [P]laintiff's mental disorder." Plaintiff should have sought leave to file a fourth amended complaint that included the allegations in the Third Amended Complaint and the allegations in the Supplement. However, in the Court's discretion and in the interest of moving this case forward, the Court will not require Plaintiff to file a fourth amended complaint that combines the two documents and, instead, will consider the allegations in the Supplement as part of the Third Amended Complaint.

## IV.    Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A pleading must contain a "short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). While Rule 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Thus, although a plaintiff's specific factual allegations may be consistent with a constitutional claim, a court must assess whether there are other "more likely explanations" for a defendant's conduct. Id. at 1951.

But as the United States Court of Appeals for the Ninth Circuit has instructed, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A "complaint [filed by a *pro se* prisoner] 'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007) (*per curiam*)).

## V.  Third Amended Complaint

In his three-count Third Amended Complaint, Plaintiff names as Defendants: current and former Arizona Governors Janice K. Brewer and Janet A. Napolitano, current and former Arizona Department of Corrections (ADOC) Directors Charles L. Ryan and Dora B. Schriro, current and former Arizona Attorney Generals Thomas C. Horne and Terry L. Goddard, ADOC Access Monitor Daryl Johnson, and Classification Officer Bennie Rollins. He names as Defendants at ASPC-Lewis: Warden Unknown and Barchey Blue Unit Deputy Warden Anne Reeder, Librarian II Janet F. Tabor, Paralegal Assistant Unknown, and Corrections Officer IIIs D. Golder and L. Garner.

Plaintiff names as Defendants at ASPC-Tucson: Warden Sally Walker, Cimarron Unit Deputy Warden A. Davenport; Santa Rita Unit Deputy Warden Anna Jacobs; Santa Rita Unit Corrections Officers Russo, Mendoza, Arbitia, Dassel, and Snyder; Santa Rita Unit

Corrections Officer III Capati; and Santa Rita Unit Librarians Jon K. Mead and William Wilson. Plaintiff names as Defendants at ASPC-Yuma: Paralegal Assistant Betty Ulibarri and Cibola Unit Warden R. Allen Bock, Deputy Warden Adam Bradley, and Corrections Officer III Stevwing. Plaintiff also names as Defendants Unknown Security Officers at ASPC-Lewis Barchey Blue Unit and ASPC-Tucson Cimarron and Santa Rita Units, and Unknown Security Officers in the ASPC-Tucson Santa Rita Unit Clothing Room.

In his Request for Relief, Plaintiff seeks declaratory and injunctive relief, monetary damages, and his attorneys fees and costs.

**A.    Count One**

**1.    Plaintiff's Allegations**

In Count One, Plaintiff alleges a violation of the Eighth Amendment prohibition against cruel and unusual punishment. He claims that a former ADOC Director created and implemented a Security Threat Group policy, Defendant Ryan revised ADOC's disciplinary policy, and Defendants Napolitano and/or Brewer enacted criminal laws requiring the segregation and punishment of dangerous inmates who violate ADOC's policies and state law. He asserts that Defendant Goddard and Horne seldom prosecute dangerous inmates who violate state criminal statutes; Defendants Schriro and Ryan seldom segregate dangerous inmates from general population inmates or each other; and Defendants Warden Unknown, Reeder, Unknown Security Officers, Walker, Davenport, Jacobs, Bock, and Bradley seldom enforce ADOC's disciplinary policy or refer to appropriate authorities inmates who violate ADOC's disciplinary policy or state criminal statutes by threatening, extorting, or assaulting other inmates.

Plaintiff alleges that while he was confined at ASPC-Lewis Barchey Blue, ASPC-Tucson Santa Rita, and ASPC-Yuma Cibola, dangerous inmates imposed and continue to impose "prison gang rules"[1] on Plaintiff. Plaintiff asserts that Defendants Schriro, Ryan,

---

[1]Plaintiff contends that the prison gang rules are cruel, debilitating, oppressive, and barbaric; promote racism; censor verbal and written communication with prison officials, medical staff, and the "outside world"; monitor inmate housing areas, jobs, and all inmate

Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, Bradley, and Unknown Security Officers are aware of these prison gang rules and that when he complains to correctional officials about these prison gang rules he is transferred for months or years from medium custody to maximum custody punitive segregation, while the dangerous inmates remain in medium custody confinement without sanctions.

Plaintiff asserts that at ASPC-Tucson Santa Rita, Defendants Ryan, Walker, and Jacobs confined Plaintiff in a two-man cell that exceeded design capacity for 18-22 hours a day. Plaintiff claims the unit was grossly understaffed and overcrowded, that security corrections officers seldom made security walks to supervise inmates and monitor their behavior, and that inmate-on-inmate violence occurred daily. Plaintiff alleges that at ASPC-Lewis Barchey Blue, Defendants Schriro, Unknown Warden, and Reeder confined Plaintiff for 18-22 hours per day in double-bunked, overcrowded dormitories that exceeded design capacity. He claims that the double bunks obscured prison officials' view of inmates and their behavior; the unit was grossly understaffed; security officers fell asleep on duty and seldom made security walks; inmate tension, hostilities, and noise levels were high; and inmate-on-inmate violence occurred daily. Plaintiff asserts that at ASPC-Yuma Cibola, Defendants Ryan, Bock, and Bradley confined Plaintiff in the same conditions.

Plaintiff asserts that Defendants Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, Bradley, and Unknown Security Officers had knowledge of the substantial risk of serious harm Plaintiff faced while confined in the aforementioned conditions and that the risk was "longstanding, pervasive, and apparent to any knowledgeable observer."[2] Plaintiff claims that, as a result of the substantial risk of serious harm, "numerous

---

activities with threats of violence or death; extort inmate property; and require inmates to produce legal documents identifying their criminal offenses.

[2]Plaintiff contends that Defendants Schriro, Ryan, Warden Unknown, Reeder, Walker, Jacobs, Davenport, Bock, and Bradley either observed or received reports about the assaults and read written statements by "thousands of inmates" who complained about the dangerous inmates, the prison gang rules, and inadequate safety; that he filed a grievance and grievance appeal; and that he and "hundreds of other inmates" spoke to mental health personnel about

inmates (including Plaintiff although this is not a claim herein)" were brutally assaulted, died, had property losses, and suffered mental and psychological injuries or the exacerbation of preexisting mental and psychological injuries. Plaintiff contends that these Defendants "failed to take reasonable measures to abate the substantial risk of serious harm and violence at the above prison facilities."

Plaintiff also contends that the ADOC, Defendants Schriro and Ryan, and other individuals, informed Defendants Napolitano and Brewer of the need for more funds for security staff, training, and improvements in inmate safety, but the requests for more funds were denied.

Plaintiff asserts that he has feared and continues to fear for his safety, his mental illness has worsened, and he has suffered mental and psychological injuries and monetary loss.

### 2. Defendants Brewer and Napolitano

To the extent Plaintiff is suing Defendants Brewer and Napolitano for failing to allocate additional funds for security staff and training and inmate safety improvements, Defendants Brewer and Napolitano are entitled to absolute immunity.[3] See San Pedro Hotel Co., Inc. v. City of Los Angeles, 159 F.3d 470, 476 (9th Cir. 1998) ("The disbursement of public funds in support of one project necessarily means that other projects are not being funded. A legislator's decision can almost always be criticized for not funding some worthy group. This is precisely the type of decision for which a legislator must be given immunity."). Thus, the Court will dismiss without prejudice Defendants Brewer and Napolitano.

. . . .

---

the issue and sought counseling and assistance.

[3]Plaintiff also alleges that Defendants Napolitano and Brewer enacted criminal laws requiring the segregation and punishment of dangerous inmates who violate ADOC policies and state law. Enacting these laws does not violate the Eighth Amendment. Moreover, such an allegation erodes, rather than supports, a claim that Defendants Napolitano and Brewer were deliberately indifferent to inmate safety.

### 3. Defendants Horne and Goddard

Plaintiff's sole allegation against Defendants Horne and Goddard is that they seldom prosecute dangerous inmates who violate state criminal statutes. "[A] decision whether to prosecute or not prosecute is entitled to absolute immunity." Slater v. Clarke, ___ F.3d ___, 2012 WL 5834968, *2 (9th Cir. Nov. 19, 2012). Thus, the Court will dismiss Plaintiff's claim against Defendants Goddard and Horne.

### 4. Defendant Unknown Security Officers

Although *pro se* pleadings are liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972), conclusory and vague allegations will not support a cause of action. Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982). Further, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled. Id.

To state a valid claim under § 1983, plaintiffs must allege that they suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that defendant. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948. Conclusory allegations that a Defendant or group of Defendants have violated a constitutional right are insufficient.

Plaintiff's allegations in Count One against Defendants Unknown Security Officers are nothing more than vague and conclusory allegations against a group of Defendants. This is insufficient to state a claim against them. In addition, Rule 10(a) of the Federal Rules of Civil Procedure requires the plaintiff to include the names of the parties in the action. As a practical matter, it is impossible in most instances for the United States Marshal or his designee to serve a summons and complaint on a group of unidentified defendants. Therefore, the Court will dismiss without prejudice Defendant Unknown Security Officers.

. . . .

. . . .

**5.** **Defendants Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley**

An Eighth Amendment claim requires a sufficiently culpable state of mind by the Defendants, known as "deliberate indifference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. <u>Id.</u> at 835. To state a claim of deliberate indifference, plaintiffs must meet a two-part test. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious"; the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." <u>Id.</u> at 834. Second, the prison official must have a "sufficiently culpable state of mind," *i.e.*, he must act with deliberate indifference to inmate health or safety. <u>Id.</u> In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, <u>and</u> he must also draw the inference." <u>Id.</u> at 837 (emphasis added).

"[A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." <u>Id.</u> at 847. A plaintiff "may demonstrate deliberate indifference by showing that the risk of harm was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past' such that the defendants 'must have known' about the risk." <u>Betts v. New Castle Youth Dev. Ctr.</u>, 621 F.3d 249, 259 (3rd Cir. 2010) (quoting <u>Farmer</u>, 511 U.S. at 842).

A prisoner facing unsafe prison conditions and seeking injunctive relief to "prevent a substantial risk of serious injury from ripening into actual harm" need not wait for an event such as an assault before obtaining relief. <u>Farmer</u>, 511 U.S. at 845. Liberally construed, Plaintiff has stated an Eighth Amendment deliberate indifference claims against Defendants Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley. The Court will require these Defendants to answer Count One.

. . . .

. . . .

**B.** **Count Two**

    **1.** **Plaintiff's Allegations**

In Count Two, Plaintiff alleges two separate violations[4] of the Eighth Amendment prohibition against cruel and unusual punishment regarding his basic necessities.

First, he claims that on November 22, 2011, while confined at ASPC-Tucson Santa Rita, he submitted his laundry bag with his only two bed sheets for washing, but neither the laundry bag nor the sheets were returned to him. The following day, Plaintiff requested replacement sheets and a laundry bag, but Defendants Mendoza, Arbitia, and Dassel told him that they could not replace the items and that Plaintiff would need to talk to another correctional officer. Plaintiff claims that he attempted to speak with that correctional officer and submit an inmate letter, but the correctional officer refused to accept the letter and told Plaintiff that it needed to be submitted through the inmate letter box. Five days later, the correctional officer told Plaintiff that an incident report would need to be written before he could issue the replacement items.

On November 30, 2011, Plaintiff submitted an inmate letter to Defendant Capati. Thirty-five days later, Defendant Capati responded to the letter, stating that Plaintiff would need to wait 15 days for a response from "support services." Plaintiff submitted an inmate grievance that same day. The following day, the grievance coordinator gave Plaintiff the replacement items. Plaintiff contends that he was forced to sleep on a mattress, without sheets, for 45 days during the winter.

Second, Plaintiff contends that on January 23, 2010, all of his "orange clothing, except the pant[s] and shirt he was wearing," were stolen when he turned them in to be washed. Plaintiff states that he submitted an inmate clothing request to Defendant Snyder, who

---

[4]The Court notes that by alleging two completely separate violations in Count Two (as well as alleging multiple claims in Count Three), Plaintiff has violated the "one claim per count" rule set forth in the form Complaint and accompanying instructions. <u>See</u> LRCiv 3.4 (complaint must be in accordance with the instructions provided with the form). The Court, in its discretion, will disregard this requirement on this occasion in order to move this case forward.

1    informed Plaintiff that someone was stealing inmate clothing and that he did not have any

2    clothing or laundry bags to issue to Plaintiff.  Plaintiff claims that he also requested a pillow,

3    pillowcase, footwear, and a mattress.  Plaintiff contends that he utilized the grievance system

4    and five months later was given the requested mattress, clothing, linens, and a pair of deck

5    shoes.  Plaintiff claims that for five months he was forced to wear the same dirty clothing,

6    sleep on the same dirty sheets and worn out mattress, and wear his own tennis shoes.

7        Plaintiff contends that both events aggravated his depression and caused him distress.

8    He claims that Defendants acted with deliberate indifference to his right to adequate clothing,

9    linen, bedding, and footwear.

10               **2.    Discussion**

11       Plaintiff's  allegations do not support a claim that any of the named Defendants were

12   deliberately indifferent to a serious risk of harm to Plaintiff's health or safety.  Although

13   inconvenient and even distressing, the events described in this claim do not rise to the level

14   of a substantial risk of serious harm.  Thus, the Court will dismiss without prejudice Count

15   Two and Defendants Mendoza, Arbitia, Dassel, Capati, and Snyder.

16       **C.    Count Three**

17       In Count Three, Plaintiff alleges multiple violations of his First Amendment right of

18   access to the courts.  The right of meaningful access to the courts prohibits officials from

19   actively interfering with inmates' attempts to prepare or file legal documents.  <u>Lewis v.</u>

20   <u>Casey</u>, 518 U.S. 343, 350 (1996).  The right of access to the courts is only a right to bring

21   petitions or complaints to federal court and not a right to discover such claims or even to

22   ligate them effectively once filed with a court.  <u>Id.</u> at 354.  The right also includes the ability

23   to litigate claims "without *active interference* by prison officials."  <u>Silva v. DiVittorio</u>, 658

24   F.3d 1090, 1103 (9th Cir. 2011) (emphasis in original).

25       As a matter of standing, for an access-to-courts claim, a plaintiff must show that he

26   suffered an "actual injury" – "actual prejudice with respect to contemplated or existing

27   litigation, such as the inability to meet a filing deadline or to present a claim."  <u>Lewis</u>, 518

28   U.S. at 348-49 (citation omitted).  "[T]he injury requirement is not satisfied by just any type

1  of frustrated legal claim." <u>Id</u>. at 354. The nonfrivolous claim must be a direct or collateral

2  attack on the inmate's sentence or a challenge to the conditions of his confinement. <u>Id</u>. at

3  355; <u>see also</u> <u>Silva</u>, 658 F.3d at 1103.

4                              **1.      Legal Books and Assistance**

5          Plaintiff alleges that Defendants Brewer, Ryan, Bock, and Bradley do not provide him

6  with law books containing court decisions, "shepardizers," legal self-help books, or a trained

7  legal assistant. Plaintiff asserts that Defendants Brewer, Ryan, Bock, and Bradley's failure

8  to provide him with law books or a legal assistant made it impossible for him to prepare

9  adequate first and second amended complaints in this case, an adequate state court notice of

10  post-conviction relief based on newly discovered material facts, and a timely notice of post-

11  conviction relief regarding "[a] significant change in state law." Plaintiff also contends that

12  Defendant Golder refused to process a grievance Plaintiff filed regarding a lack of legal

13  books and assistance.

14          As to his First and Second Amended Complaints, Plaintiff vaguely alleges that the

15  lack of legal books or assistance made it impossible "to prepare adequate effective first and

16  second amended complaint[s] in this action." These allegations are too vague to state a

17  claim. Moreover, this case is ongoing and Plaintiff therefore has not suffered an actual

18  injury. In addition, both the First and Second Amended Complaints were dismissed because

19  of defects about which the Court had previously advised Plaintiff.[5]

20  . . . .

21

22  _____

23          [5]In the Court's May 10, 2012 Order, the Court directed the Clerk of Court not to file
   Plaintiff's lodged First Amended Complaint because Plaintiff had not complied with the page
24  limitation specifically identified in the court-approved form the Court previously sent
   Plaintiff. In the Court's August 20, 2012 Order, the Court dismissed the Second Amended
25  Complaint because Plaintiff made conclusory allegations against a group of defendants,
   rather than specific allegations regarding the specific conduct of specific defendants. The
26  Court had previously informed Plaintiff, in the Court's September 8, 2011 Order,  that
   Plaintiff must write short and plain statements telling the Court exactly what each Defendant
27  did or failed to do and explained that conclusory allegations that a Defendant or group of
28  Defendants have violated a constitutional right are not acceptable and will be dismissed.

As to his state-court notice of post-conviction relief regarding newly discovered material fact, Plaintiff states that he "needed" to file this document and "finally was able to do so on April 9, 2012." Plaintiff states that the notice of post-conviction relief was dismissed because the failure to provide him with law books or legal assistance made it impossible for him to "prepare an adequate state court notice of post[-]conviction relief based on newly discovered material facts." Plaintiff's allegations are too vague and conclusory to state a claim. Moreover, Plaintiff's April 9, 2012 notice of post-conviction relief was dismissed because the facts Plaintiff presented did not constitute newly discovered facts.[6]

As to Plaintiff's state-court notice of post-conviction relief based on a change in the law, Plaintiff contends that he learned, for the first time on April 25, 2012, that a significant change in the law occurred in 2000 when the Arizona Court of Appeals decided Arizona v. Donald, 10 P.3d 1193 (Ariz. App. 2000), and held that the right to the effective assistance of counsel extended to the decision to reject a plea offer. Plaintiff asserts that he was denied effective assistance of counsel at the time of his decision to reject a plea offer in his criminal case and that, if he had access to law books containing court decisions, he could have filed a petition for post-conviction relief on this issue 12 years ago.

Plaintiff has failed to state a claim because the right of access to the courts does not include the right to discover claims. See Lewis, 518 U.S. at 354. Moreover, the general right

_____

[6]In an April 30, 2012 Order, Maricopa County Superior Court Judge Randall W. Warner stated:

This is Defendant's tenth request for post-conviction relief.

Defendant claims . . . that he has newly discovered facts to present to the Court. However, the facts put forth by Defendant do not constitute newly discovered facts. Rather, Defendant has raised a claim . . . that his conviction and sentence were obtained in violation of his constitutional rights. . . . Additionally, Defendant previously raised these exact claims in two prior Rule 32 proceedings.

See http://www.courtminutes.maricopa.gov/docs/Criminal/052012/m5223898.pdf (last visited Dec. 11, 2012).

to effective assistance of counsel during plea negotiations existed before Plaintiff was sentenced, see Hill v. Lockhart, 474 U.S. 52, 58-59 (1985), and Donald "was not a significant change in the law," see Baldonado v. Ryan, 2011 WL 6328694, *1 (D. Ariz. 2011).

### 2. Delays

Plaintiff contends that Defendant Ryan implemented a Departmental Order requiring that inmates be provided with legal supplies regardless of their ability to pay. He asserts that Defendant Ulibarri, in violation of that policy, denied Plaintiff's request for legal supplies to prepare his First Amended Complaint and denied Plaintiff's request for legal copies to timely file the First Amended Complaint. Plaintiff states that in each instance, he needed to file a motion with the Court to extend the deadline for filing the First Amended Complaint. Plaintiff contends that Defendant Ulibarri caused unreasonable or unnecessary delays in preparing and filing the First Amended Complaint. Plaintiff also asserts that contrary to ADOC policy, Defendants Stevwing, Bradley, and Bock, approved Defendant Ulibarri's denial of Plaintiff's requests for legal supplies and copies.

Plaintiff's allegations are insufficient to state an access-to-the-courts claim. See Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) ( "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'") (citations omitted); Cf. Silva, 658 F.3d at 1104 (actual injury where plaintiff claimed pending lawsuits had been dismissed as the result of defendants' actions).

### 3. Limited Access to Prison Resource Center

Plaintiff contends that while he was confined at ASPC-Tucson Santa Rita, Defendants Jacobs, Mead, and Wilson only allowed Plaintiff 45 minutes per week of access to the prison resource center to conduct legal research and writing, and did not allow any access if the prison was on lockdown. Plaintiff has failed to state a claim because he does not allege that he suffered any actual injury due to limited access, or no access during lockdowns, to the prison resource center. See Davis, 320 F.3d at 352; Cf. Silva, 658 F.3d at 1104. See also Hebbe, 627 F.3d at 342-43 (reversing dismissal of access claim where prisoner claimed he

was denied access to prison library while the prison was on lockdown *and* the denial prevented him from filing a brief in support of his state court criminal appeal).

#### 4.     Indigency Policy and Outdated Forms

Plaintiff claims that Defendant Ryan's "indigent policy" forces Plaintiff to choose between needed hygiene supplies and legal supplies, especially in light of a state law passed by either Defendant Napolitano or Brewer that requires certain deductions from an inmate's account. Plaintiff contends that deductions are made to pay for utilities and healthcare requests, that 5% of an inmate's earned monies are deducted from his trust account, and that 1% of all deposits are deducted from the trust account.

Plaintiff also asserts that while he was confined at ASPC-Tucson Santa Rita, Defendant Mead provided him with an outdated civil cover sheet, application to defer or waive court costs, and a summons form for filing a state court case. He also contends that Defendant Johnson failed to keep these forms updated.

These allegations are too vague and conclusory to state a claim. Plaintiff has failed to explain how Defendant Ryan's "indigent policy" denied him access to the courts or how being provided with outdated forms (or failing to keep those forms updated) deprived him of access to the courts.

#### 5.     Lack of Access to Private Space for Research and Writing

Plaintiff asserts that Defendants Ryan, Walker, Jacobs, Bock, Bradley, Mead, and Wilson do not provide Plaintiff with a means or space to conduct private and confidential legal research and writing. Plaintiff has failed to state an access-to-the-court claim; there is no right for a prisoner to have private space to conduct legal research and writing. Moreover, Plaintiff does not allege that he suffered an actual injury from the lack of private space to conduct his legal research and writing.

#### 6.     Sealing Envelopes and Sending Certified Mail

Finally, Plaintiff contends that Defendant Russo refused to allow Plaintiff to seal envelopes to the Court that contained legal documents and refused to send Plaintiff's legal documents to the Attorney General by certified mail. Plaintiff has failed to state a claim; he

1  does not allege that Defendant Russo refused to mail Plaintiff's legal documents to the Court
2  or failed to send legal documents to the Attorney General by regular mail.  In addition, he
3  has failed to allege that Defendant Russo's conduct caused him any actual injury.

4  **VI.    Motion for Court Order to Renew or Reconsider**

5          In his "Motion for Court Order to Renew or Reconsider Plaintiff's Motion for TRO
6  and Preliminary Injunction and the Memo of Law in Support Thereof and Appendix of
7  Exhibits/Motion for Counsel," Plaintiff requests that the Court issue an Order "to renew or
8  reconsider" Plaintiff's June 27th Motion for TRO and Preliminary Injunction and Motion for
9  Appointment of Counsel and to consider his Memorandum and Appendix of Exhibits in
10 support of the Motion for TRO and Preliminary Injunction.  He states that his request is
11 "based on the allegations and claims presented in the third amended complaint."

12         "Motions to reconsider are appropriate only in rare circumstances." Defenders of
13 Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D. Ariz. 1995).  "The purpose of a motion
14 for reconsideration is to correct manifest errors of law or fact or to present newly discovered
15 evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985).  Such motions
16 should not be used for the purpose of asking a court "'to rethink what the court had already
17 thought through – rightly or wrongly.'"  Defenders of Wildlife, 909 F. Supp. at 1351
18 (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va.
19 1983)).

20         The Court will deny Plaintiff's Motion for Court Order to Renew or Reconsider.
21 Plaintiff has presented no basis for reconsidering either motion.

22 **VII.   Warnings**

23         **A.      Address Changes**

24         Plaintiff must file and serve a notice of a change of address in accordance with Rule
25 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other
26 relief with a notice of change of address.  Failure to comply may result in dismissal of this
27 action.

28 . . . .

. . . .

**B. Copies**

Plaintiff must serve Defendants, or counsel if an appearance has been entered, a copy of every document that he files. Fed. R. Civ. P. 5(a). Each filing must include a certificate stating that a copy of the filing was served. Fed. R. Civ. P. 5(d). Also, Plaintiff must submit an additional copy of every filing for use by the Court. See LRCiv 5.4. Failure to comply may result in the filing being stricken without further notice to Plaintiff.

**C. Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice. See Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)     Plaintiff's September 21, 2012 Motion to Enlarge Time (Doc. 55) is **granted**; the Court will consider Plaintiff's Third Amended Complaint as timely filed.

(2)     Plaintiff's October 5, 2012 "Motion for Court Order to Renew or Reconsider Plaintiff's Motion for TRO and Preliminary Injunction and the Memo of Law in Support Thereof and Appendix of Exhibits/Motion for Counsel" (Doc. 56) is **denied without prejudice**.

(3)     Counts Two and Three of the Third Amended Complaint are **dismissed** without prejudice.

(4)     Defendants Brewer, Napolitano, Horne, Goddard, Johnson, Rollins, Tabor, Paralegal Assistant Unknown, Golder, Garner, Russo, Mendoza, Arbitia, Dassel, Snyder, Capati, Mead, Wilson, Stevwing, Ulibarri, Unknown Security Officers at ASPC-Lewis Barchey Blue Unit and ASPC-Tucson Cimarron and Santa Rita Units, and Unknown Security Officers in the ASPC-Tucson Santa Rita Unit Clothing Room, are **dismissed** without prejudice.

(5)     Defendants Schriro, Ryan, ASPC-Lewis Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley must answer Count One of the Third Amended Complaint.

(6)     The Clerk of Court must send Plaintiff a service packet including the Third Amended Complaint (Doc. 57), the Supplement (Doc. 58) this Order, and both summons and request for waiver forms for Defendants Schriro, Ryan, ASPC-Lewis Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley.

(7)     Plaintiff must complete[7] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order. The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

(8)     If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons, Third Amended Complaint, and Supplement on a Defendant within 120 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served. Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(I).

(9)     The United States Marshal must retain the Summons, a copy of the Third Amended Complaint, the Supplement, and a copy of this Order for future use.

(10)    The United States Marshal must notify Defendants of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure. The notice to Defendants must include a copy of this Order. **The Marshal must immediately file signed waivers of service of the summons. If a waiver of service of summons is returned as undeliverable or is not returned by a Defendant within 30 days from the date the request for waiver was sent by the Marshal, the Marshal must**:

---

[7]If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff must list the address of the specific institution where the officer or employee works. Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

(a)   personally serve copies of the Summons, Third Amended Complaint, Supplement, and this Order upon Defendant pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b)   within 10 days after personal service is effected, file the return of service for Defendant, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon Defendant. The costs of service must be enumerated on the return of service form (USM-285) and must include the costs incurred by the Marshal for photocopying additional copies of the Summons, Third Amended Complaint, Supplement, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendant pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

(11)   **A Defendant who agrees to waive service of the Summons, Third Amended Complaint, and Supplement must return the signed waiver forms to the United States Marshal, not the Plaintiff.**

(12)   Defendants Schriro, Ryan, ASPC-Lewis Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley  must answer the Third Amended Complaint or otherwise respond by appropriate motion within the time provided by the applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

(13)   Any answer or response must state the specific Defendant by name on whose behalf it is filed.  The Court may strike any answer, response, or other motion or paper that does not identify the specific Defendant by name on whose behalf it is filed.

(14)    This matter is referred to Magistrate Judge Edward C. Voss pursuant to Rules 72.1 and 72.2 of the Local Rules of Civil Procedure for all pretrial proceedings as authorized under 28 U.S.C. § 636(b)(1).

DATED this 2nd day of January, 2013.

_David G. Campbell_
United States District Judge