SVK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raymond Earl Rigsby, | No. CV 11-1696-PHX-DGC (ECV) |
| Plaintiff, | |
| vs. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiff Raymond Earl Rigsby, an inmate in the custody of the Arizona Department of Corrections (ADC), filed this *pro se* civil rights action. (Doc. 57.) Plaintiff has filed a "Motion for a [Temporary Restraining Order] TRO and a Preliminary Injunction with a Request for Three Judge Court and Ultimate Prisoner Release Order," which Defendants oppose. (Docs. 60, 69.) The Court will deny the motion.

**I.     Background**

The Court screened Plaintiff's Third Amended Complaint and Supplement and determined that Count I stated a claim against Defendants Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley. (Doc. 59.) The Court dismissed Counts II and III and the remaining Defendants. (Id.)

In Count I, Plaintiff asserts that Schriro and Ryan seldom segregate dangerous inmates from general population inmates or each other and that Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley seldom enforce ADC disciplinary policy or refer to

appropriate authorities those inmates who violate ADC's disciplinary policy or state criminal statutes by threatening, extorting, or assaulting other inmates. (Doc. 57.)

Plaintiff alleges that while he was confined at ASPC-Lewis Barchey Blue, ASPC Tucson Santa Rita, and ASPC-Yuma Cibola, dangerous inmates imposed and continue to impose "prison gang rules" on Plaintiff. Plaintiff asserts that Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley are aware of these prison gang rules and that when Plaintiff complains to correctional officials about gang rules, he is transferred for months or years from medium custody to maximum-custody punitive segregation, while the dangerous inmates remain in medium custody without sanctions. Plaintiff asserts that at ASPC-Tucson Santa Rita, Ryan, Walker, and Jacobs confined Plaintiff in a small two-man cell for 18-22 hours a day. Plaintiff claims that the unit was grossly understaffed and overcrowded, that security corrections officers seldom made security walks to supervise inmates and monitor their behavior, and that inmate-on-inmate violence occurred daily.

Plaintiff alleges that at ASPC Lewis Barchey Blue, Schriro, Unknown Warden, and Reeder confined Plaintiff for 18-22 hours per day in double-bunked, overcrowded dormitories that exceeded design capacity. He claims that the double bunks obscured prison officials' view of inmates and their behavior; that the unit was grossly understaffed; that security officers fell asleep on duty and seldom made security walks; that inmate tension, hostilities, and noise levels were high; and that inmate-on-inmate violence occurred daily. Plaintiff asserts that at ASPC-Yuma Cibola, Defendants Ryan, Bock, and Bradley confined Plaintiff in the same conditions.

Plaintiff asserts that Schriro, Ryan, Warden Unknown, Reeder, Walker, Davenport, Jacobs, Bock, and Bradley had knowledge of the substantial risk of serious harm Plaintiff faced while confined in the described conditions. Plaintiff claims that, as a result of the substantial risk of serious harm, "numerous inmates (including Plaintiff although this is not a claim herein)" were brutally assaulted, died, had property losses, and suffered mental and psychological injuries or the exacerbation of preexisting mental and psychological injuries.

Plaintiff contends that these Defendants failed to take reasonable steps to correct the substantial risk of serious harm and violence. (Id.)

Plaintiff seeks declaratory and injunctive relief, including a TRO, preliminary, and permanent injunctions, a three-judge court, prisoner release order, and monetary damages. (Id.)

**II.     Preliminary Injunction**

**A.     Legal Standard**

A preliminary injunction is an extraordinary and drastic remedy and "one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997) (per curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129-130 (2d ed. 1995)). An injunction may be granted only where the movant shows that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008); Am. Trucking Ass'n, Inc. v. City of Los Angeles, 559 F.3d 1046, 1052 (9th Cir. 2009). A Request for a TRO is governed by the same general standards that govern the issuance of a preliminary injunction. See New Motor Vehicle Bd. v. Orrin W. Fox. Co., 434 U.S. 1345, 1347 n. 2 (1977); Los Angeles Unified Sch. Dist. v. U.S. Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1982).

Under the "serious questions" version of the sliding-scale test, a preliminary injunction is appropriate when a plaintiff demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor." Alliance for the Wild Rockies v. Cottrell, 632 F. 3d 1127, 1134-35 (9th Cir. 2011), citing Lands Council v. McNair, 537 F.3d 981, 987 (9th Cir. 2008) (en banc). This approach requires that the elements of the preliminary injunction test be balanced, so that a stronger showing of one element may offset a weaker showing of another. "'[S]erious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

1 irreparable injury and that the injunction is in the public interest." Id. at 1135

2 The movant has the burden of proof on each element of the test. Environmental
3 Council of Sacramento v. Slater, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).  In addition,
4 because the function of a preliminary injunction is to preserve the status quo pending a
5 determination on the merits, Chalk v. U.S. Dist. Court, 840 F.2d 701, 704 (9th Cir. 1988),
6 there is heightened scrutiny where the movant seeks to alter rather than maintain the status
7 quo.  Dahl v. HEM Pharms. Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (holding that
8 mandatory, as opposed to prohibitory, injunctions are "subject to a heightened scrutiny and
9 should not be issued unless the facts and law clearly favor the moving party").  Generally,
10 an injunction should not issue if it "is not of the same character, and deals with a matter lying
11 wholly outside the issues in the suit" (id., citing Kaimowitz v. Orlando, Fla., 122 F.3d 41, 43
12 (11th Cir. 1997)).

13 The Prison Litigation Reform Act (PLRA) also imposes requirements on prisoner
14 litigants who seek preliminary injunctive relief against prison officials.  "Preliminary
15 injunctive relief must be narrowly drawn, extend no further than necessary to correct the
16 harm the court finds requires preliminary relief, and be the least intrusive means necessary
17 to correct that harm."  18 U.S.C. § 3626(a)(2).  Thus, § 3626(a)(2) limits the court's power
18 to grant preliminary injunctive relief to inmates; "no longer may courts grant or approve
19 relief that binds prison administrators to do more than the constitutional minimum."  Gilmore
20 v. People of the State of Cal., 220 F.3d 987, 999 (9th Cir. 2000).

### B. Parties' Contentions

Plaintiff asks the Court to enter an order granting a TRO against Defendants, their successors, agents and employees directing them

> 1. not to harass, retaliate or punish Plaintiff in anyway, including transferring him to another facility without his consent, or to destroy his personal property or to search his living area or to subject him to unjustified disciplinary punishment for bringing this action;
>
> 2. to implement policies and procedures for immediate segregation of dangerous inmates from the general population and to segregate dangerous inmates "as that term is defined in Plaintiff's complaint";
>
> 3. to eliminate double bunking in dormitory units;

    4.  not to deprive inmates of adequate outdoor exercise at a minimum of "10 hours per day of open yard";

    5. not to deprive inmates of medical care for serious medical needs;

    6. to provide each inmate with 60 square feet of usable floor space in inmate living areas;

    7. to implement a classification policy that provides for the segregation of dangerous inmates from general population upon receipt of inmates at the state reception facility;

    8.  to provide the Court with a proposed resolution of overcrowding within 10 work days as an alternative to implementing a preliminary injunction and three-judge court for a prisoner release order;

    9.  to provide the Court with a resolution for providing inmates access to law books containing court decisions and inmate assistance from someone trained to use law books;

    10.  to provide to inmates with actions pending in court or desiring to file an action challenging their conviction or conditions of confinement 10 hours per week of access to the resource center;

    11. to provide basic legal supplies if the inmate's prison account is less than $56 at the time of the request;

    12. to provide inmates basic hygiene supplies if the inmate's account is below $20 at the time of the request; and

    13. to provide inmates adequate clothing, linen and footwear.

(Doc. 60 at 4-5.) Plaintiff asserts there is a substantial likelihood of success on the merits. (Id. at 2, Doc. 61 at 2-6.) He relies on his declaration and affidavit filed in support of his previous motions for a TRO and preliminary injunction. (Doc. 60 at 1; ref. Doc. 37.) Plaintiff claims there is a substantial threat of irreparable harm because as a result of the conditions of confinement—which include overcrowding and understaffing, inadequate medical care and clothing, and obstructed access to the courts—he is exposed to a substantial risk of inmate-on-inmate violence. He claims that the threat to him outweighs harm caused to Defendants by the proposed injunction and that the public interest will be served. (Id. at 2-3.)

  Defendants oppose. (Doc. 69.) They argue that Plaintiff fails to establish irreparable harm. (Id. at 2.) To establish eligibility or ineligibility for injunctive relief, parties may rely on developments that postdate the pleadings and pretrial motions. Farmer v. Brennan, 511 U.S. 825, 846 (1994). Defendants note that Plaintiff filed his original Complaint in state court

- 5 -

on June 27, 2011, and that he has been requesting preliminary injunctions since April 20, 2012. At that time he filed a Motion for TRO and Preliminary Injunction (Doc. 32) identical to the one before the Court at this time. On June 27, 2012, Plaintiff filed a Motion for TRO and Preliminary Injunction identical to this one. (Doc. 48.) Defendants argue that this history demonstrates that Plaintiff does not face any circumstances meriting a preliminary injunction. Plaintiff does not state that he has applied for or been denied Protective Segregation (PS) or that he has been assaulted or otherwise faces immediate danger. Defendants also note that ADC has procedures and protocols to protect Plaintiff, including PS. (Doc. 69 at 4, Ex. B, Departmental Order (DO) 805.)

Plaintiff submits a reply with numerous exhibits. (Doc. 78.) He states that in his affidavit filed on April 23, 2012, he asserts that he has been assaulted on three separate occasions minutes apart and that these assaults can be verified through discovery and medical and other records. (Id. at 2-3.) He also points to facts alleged in the First and Second Amended Complaints. (Id. at 3.) He argues that Ryan has not denied the allegations regarding dangerous inmates, prison gang rules, and overcrowding. As to the argument that he has not requested PS, Plaintiff points to his allegation that his only recourse is to complain to prison officials who respond by placing him in a maximum-custody punitive segregation although he is a medium-custody inmate. Plaintiff argues that all Ryan had to do was read Plaintiff's exhibits. He also asserts that he was granted home arrest by the Board of Clemency on June 28, 2012, but in retaliation for filing this lawsuit, Ryan denied his address for home arrest and provided inaccurate information to the Board, which caused the home arrest to be revoked. (Id. at 7.)

### C. Analysis

The Court will deny the motion. Much of the relief sought in the motion is not of the same character as the issues in the lawsuit or relates to dismissed Counts. Moreover, Plaintiff fails to demonstrate irreparable harm or a likelihood of success on the merits.

As noted, the remaining claims in the case relate to safety and security. They do not include matters such as health care, legal supplies, or access to the courts. Plaintiff did not

submit a new Motion for a TRO or Preliminary Injunction after his Third Amended Complaint was screened and numerous claims dismissed.

As to the allegations relating to security and safety, Plaintiff's Motion merely refers the Court to Plaintiff's 43-page affidavit; it does not cite to specific portions of the affidavit. Plaintiff's discussion of likelihood of success on the merits contains many citations to cases but no discussion of the facts of his own case. Likewise, he offers no discussion or facts relating to irreparable harm. "Judges need not paw over the files without assistance from the parties." See Orr v. Bank of America, 285 F.3d 764, 775 (9th Cir. 2002) (quoting Huey v. UPS, Inc., 165 F.3d 1084, 1085 (7th Cir. 1999); see also Bias v. Moynihan, 508 F.3d 1212 (9th Cir. 2007) (A district court lacks the authority to act as a party's lawyer, even for pro se litigants.)

Even considering the facts to which Plaintiff points in his reply – specifically, his assaults – there is no evidence to support a TRO or preliminary injunction. Plaintiff's affidavit states that he was assaulted three times on the same day in July 2004. (Doc. 37, Pl. Aff. ¶¶ 10-15.) These assaults occurred almost nine years ago and are insufficient to establish a threat of irreparable harm in 2013. "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." See Caribbean Marine Servs. Co., Inc. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988).

As to likelihood of success on the merits of his underlying claims, without more, a claim of overcrowding is not cognizable under § 1983. Toussaint v. Yockey, 722 F.2d 1490, 1492 (9th Cir.1984), citing Rhodes v. Chapman, 452 U.S. 337, 346 (1981). Only if overcrowding is combined with other factors, such as violence or inadequate staffing, does it rise to an Eighth Amendment violation. Balla v. Idaho State Bd. of Corr., 869 F.2d 461, 471 (9th Cir. 1989); Hoptowit v. Ray, 682 F.2d 1237, 1246-49 (9th Cir. 1982). There is no Eighth Amendment violation if inmates' basic needs are separately met; in other words, conditions that satisfy Eighth Amendment requirements cannot in combination amount to an Eighth Amendment violation. Hoptowit, 682 F.2d at 1247. Plaintiff fails to establish that the conditions of his confinement are unconstitutional.

Finally, Plaintiff requests a hearing before a three-judge court, which is required to enter a prisoner release order. 18 U.S.C. § 3626(a)(3)(B). A party seeking a prisoner release order must submit materials sufficient to demonstrate that (1) the court has previously entered an order for less intrusive relief and that order has failed to remedy the deprivation sought to be cured and (2) the defendant has had a reasonable amount of time to comply with the previous court order. 18 U.S.C. § 3626(a)3(A)(i-ii) and (C). Plaintiff submits no such evidence.

**IT IS ORDERED that** the reference to the Magistrate Judge is withdrawn as to Plaintiff's "Motion for a TRO and a Preliminary Injunction with a Request for Three Judge Court and Ultimate Prisoner Release Order" (Doc. 60), and it is **denied**.

DATED this 27th day of March, 2013.

*David G. Campbell*
David G. Campbell
United States District Judge